

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MONICA JACQUET
Vs.                                                          C.A. No.        2013 CA 008481 B
STARWOOD HOTELS AND RESORTS WORLDWIDE, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JOHN M MOTT
Date:  December 24, 2013
Initial Conference: 10:00 am, Friday, April 11, 2014
Location:  Courtroom 221
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

Superior Court of the District of Columbia
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Monica Jarquet
_____
Plaintiff

vs.

Starwood Hotels and Resorts Worldwide, Inc
_____
Defendant

Case Number 13-0008481

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jennifer Bzdicek / Sofia Yazykova
Name of Plaintiff's Attorney

20 F Street NW, Suite 700
Address
Washington, DC 20001

202-617-0707
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 12/04/13

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                          CASUM.doc



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                    Demandante
          contra

                                      Número de Caso: _____

_____
                    Demandado

## CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

Por: _____
_____                         Subsecretario
Dirección

_____

_____                  Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

    Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Monica Jacquet )
6904 Ellingham Circle Unit F )
Alexandria, VA 22315 )
 )
      Plaintiff, )
 ) Case No. 13-0008481
v. )
 )
Starwood Hotels and Resorts )
Worldwide, Inc. ) COMPLAINT
One Star Point ) JURY TRIAL DEMANDED
Stamford, CT 06902 )
 )
      Defendant. )
 )



RECEIVED
Civil Clerk's Office
DEC 24 2013
Superior Court
of the District of Columbia
Washington, D.C.

## COMPLAINT

COMES NOW Monica Jacquet ("Plaintiff"), by and through her undersigned counsel, and alleges against Starwood Hotels and Resorts Worldwide, specifically, the W Hotel in Washington, DC (hereinafter "Defendant") claims of discrimination and retaliation in violation of the District of Columbia Human Rights Act of 1977 ("DCHRA"). Plaintiff sets forth the facts, claims and seeks relief a follows:

### JURISDICTION AND VENUE

1. Subject Matter of this Court is proper pursuant to the provisions of D.C. Code Annotated, 1981 edition, as amended, Sec. 11-921.

2. Personal jurisdiction over Defendant is invoked pursuant to the provision of D.C. Code Annotated, 1981 edition, as amended, Sec. 13-423.

3. Venue is proper in the District of Columbia ("DC") because this action relates to Plaintiff and Defendant's activities within DC.

1

## FACTUAL ALLEGATIONS

4. Plaintiff is an African-American female.

5. Plaintiff began her employment with Defendant in June 2013 as the Assistant Director of Bar Concepts at the POV Lounge of the W Hotel.

6. Plaintiff works under the supervision of Scott Vollmer, Director of Bar Concepts, who has been working there approximately a year.

7. On or about June 21, 2013, an African-American female was interviewed for the server position in the Living Room bar. She was fully qualified for the position. However, Mr. Vollmer said she was not "W enough" as the reason for not hiring her, clearly referring to her race. During Plaintiff's employment, Mr. Vollmer has hired mostly Caucasians, and zero African-Americans.

8. On or about September or October 2013, a couple African-American musicians were planning to stay at The W Hotel, including Sean Paul. As the all Caucasian management met to discuss this in front of Plaintiff, they discussed putting them on the 10th floor, which is considered to be one of lowest class floors in the hotel.

9. On or about October 30, 2013, Mr. Vollmer referred to customers of the Park at 14th, who are predominantly African-American, as "those people" and made comments such as "those people are ridiculous" and "those people never present the hotel in a good light," making clear he did not want them present at the W. These comments were made in front of Plaintiff without hesitation.

10. Since Mr. Vollmer began working at The W, he stopped allowing hip hop music to be played, even if a guest requested it, because it would attract "those people" he didn't want present.

11. Plaintiff was obviously offended by Mr. Vollmer's comments but had already been having issues with him and Human Resources as a result of a religious accommodation request that had already become a sore spot, so she began to feel that HR was not taking her seriously as she told the HR Director she felt that Scott was retaliating against her for requesting accommodation by his tone and snarky comments.

12. Plaintiff began realizing how differently she was being treated than the other Management staff in POV. At one point when she was scheduled for 6 days but needed a specific day off, she asked someone else (Caucasian male) to cover for her and he agreed. Mr. Vollmer then turned to that person and asked if was okay, telling them he didn't want them to work 6 days a week, although it was okay for Plaintiff to do it. Another time, Plaintiff had to leave slightly early for a doctor's appointment after working a full 8 hour day, but was yelled at by Mr. Vollmer for not informing him earlier although she tried and couldn't reach him; however, he would tell other managers (Caucasian) to go home early if they had other plans after only working a 5 or 6 hour shift. Plaintiff would also get regularly yelled at for minor things such as not informing Mr. Vollmer an employee was going home sick, even though he was there and even took part in the conversation. Meanwhile, other managers would lose keys to the place or take them home (on more than one occasion) and not even get a discussion about it.

13. For months, Plaintiff had consistently been scheduled from 9 am to 6 or 7 pm Tuesday through Saturday. However, things began to escalate once it became clear that Plaintiff wasn't going to back down and quit even though it was clear she was not wanted there. As such, Mr. Vollmer began changing her schedule without notice.

14. On or about December 13, 2013, Plaintiff saw that Mr. Vollmer scheduled her to work a 3 pm shift, which would end at 11 pm or 12 am, on Saturday, December 21, 2013 and on

3

December 28, 2013, when she specifically requested to be working a 9 am shift. Upon learning this, Plaintiff immediately informed Defendant that she had not been given notice of her schedule change, that she had specifically requested a 9 am shift on December 28, and that she was unable to work a 3 pm shift on December 21, 2013 as she had to leave at 7 pm due to a personal family issue.

15. When asked why she didn't put in a schedule request for December 21st, she stated that she never had to as she had worked the same schedule for months and on the rare night a change was needed, Mr. Vollmer would come to her and inform her in advance, which had not happened on this occasion. She did put the request in on December 28, however, as it was a holiday week and there was a special sheet that was sent out to all management staff for scheduling that week.

16. On or about December 16, 2013 Plaintiff sent an email to HR alleging disparate treatment and hostile work environment after a Christmas tree that was left from a private event and set to be left upstairs for the guest to pick up the next day, was left in the management office, right next to Plaintiff's desk. The only two people that could have done it, one of which was Mr. Vollmer, both knew that Plaintiff was extremely allergic to multiple things including trees. After asking for the office to be aired out and requesting to meet elsewhere to discuss other items with Mr. Vollmer (for which he did not show up), Plaintiff finally sent an email to HR making some of the more minor, but still serious complaints about the work environment.

17. On or about December 20, 2013, Plaintiff was told that she was wanted in the HR office. Completely unaware of what the meeting could be about and given that things had already escalated to the point where Plaintiff had sought an attorney, she immediately contacted her attorney to see what to do. Her attorney had just received a phone call from Defendant's

attorney, and as such, Plaintiff's counsel told her to hold off for a few minutes as she was going to call Defendant's attorney back to see if she could get any insight.

18. Plaintiff informed Defendant that she was waiting for her attorney to call her right back, but Defendant was not satisfied with Plaintiff's response. Defendant then made a huge scene in front of the W Hotel staff and guests, and escorted Plaintiff into the HR office. She was told that if she did not comply with their request and failed to work the entire 3 pm shift on Saturday, it would be considered insubordination and she would be reprimanded. Plaintiff again explained her inability to work that shift, that she has the same set schedule, that it has been the custom and practice to notify her in advance of any changes, and that she had not been given notice of the change. Once she learned of the schedule change, she notified all management immediately. However, the threat still stood and she was also told that although a salaried employee, she is not allowed to contact her attorney while on company time, despite the fact that Defendant called their attorney while on the phone with Plaintiff's attorney and on company time. The staff that saw the incident became so concerned they began texting Plaintiff to see if she was okay.

19. On or about December 21, 2013, Plaintiff complained again in writing to HR in fuller detail about discrimination and other illegal activities in violations of the Fair Labor Standards Act that were going on by the company that she took issue with. She couldn't believe that she was being threatened to be reprimanded for not working a shift she is not usually scheduled and couldn't work, although she would have if was notified in advance and knew it had to be related to her discrimination complaints. So, she wanted to make sure it was further documented.

20. The following day, she had off of work, and when she came in on December 23, 2013, only two days after her discrimination complaint, Plaintiff was suspended from work without pay because she left early on Saturday to attend to her family issue, just as she had been telling Defendant she had to for since her schedule had been changed without notice.

21. Consequently, Plaintiff suffered losses financially and emotionally, which have manifested themselves physically in the form of depression, gastro issues, headaches, stress, and anxiety.

## COUNT I – RETALIATION UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

22. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

23. In order to establish a *prima facie* claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; (3) and there was a causal connection between the protected activity and the adverse employment action.

24. Plaintiff engaged in a protected activity by making complaints to HR regarding retaliation and discrimination.

25. Plaintiff suffered an adverse employment action by the employer when she was suspended without pay.

26. There is a casual connection between the protected activity and the adverse employment action, as they are close in time and proximity, and Defendant did not take any adverse actions against other people committing the same alleged offenses.

## COUNT II – DISPARATE TREATMENT DISCRIMINATION UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

27. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

28. In order to establish a *prima facie* claim of disparate treatment discrimination, plaintiff must establish that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.

29. Plaintiff is a member of a protected class as she is African-American.

30. Plaintiff suffered an adverse employment action when she was suspended without pay.

31. The unfavorable action gives rise to an inference of discrimination as Scott Vollmer has made discriminatory comments about African-Americans, refused to hire a qualified African-American saying she was not "W enough," and allowed employees of other races similarly situated to Plaintiff to leave early without suspension.

32. Plaintiff suffered financial and emotional damages as a result of this disparate treatment discrimination.

## COUNT III – HOSTILE WORK ENVIRONMENT UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

33. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

34. To establish a prima facie case of a hostile work environment claim, a plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.

7

35. Plaintiff is a member of a protected class as she is African-American.

36. Plaintiff's harassment was clearly unwelcome as she reported it to HR on more than one occasion in an attempt to get it to stop.

37. The harassment occurred because of Plaintiff's protected status based on the numerous comments made by Plaintiff's direct supervisor regarding members of her race and the fact that no other race was subjected to the same harassment.

38. The harassment affected a term, condition, or privilege of employment as it interfered with Plaintiff's every day work, causing her to become depressed and have gastro-intestinal problems, among other things. Additionally, she was suspended from employment for complaining about the harassment.

39. The employer knew of the harassment as Plaintiff had complained to Human Resources about it..

40. Plaintiff suffered financial, physical, and emotional damages as a result of this hostile work environment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Monica Jacquet, prays for judgment against Defendant for not less than $225,000 as follows:

    a. That judgment be entered in her favor against Defendant;

    b. For liquidated damages, including back pay in an amount to be proven at trial;

    c. For compensatory damages of pain and suffering an amount to be proven at trial;

    d. For other general and special damages in an amount to be proven at trial;

    e. For punitive damages in an amount sufficient to punish and set an example of Defendant;

f.  For attorney's fees and other costs of bringing suit;

g.  For prejudgment interest;

h.  For such other relief that the court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all matters contained in this Complained be tried by Jury.

Respectfully Submitted,

THE BEZDICEK LAW FIRM, PLLC

Dated: December 24, 2013

_____
Jennifer L. Bezdicek (Bar #979041)
Sofia Yazykova (Bar #1004969)
20 F Street NW, Suite 700
Washington, DC 20001
(202) 617-0707
jbezdicek@bezdiceklaw.com